CAROLINE D. MERSHON et al., appellants,

and

SARAH ANN DUER, respondent.

The title to a house and lot was taken in 1852 in the name of one R., but the consideration was paid by one D., who, with his family, continuously occupied the premises thereafter until his death, and paid the taxes thereon and for all improvements and repairs, without accounting for the rents to R., or being called on by R. to do so. R., at the request of D., afterwards conveyed the premises to C., who was D.'s daughter by a former wife. *Held*, that D. had a resulting trust in the premises, and that his wife, the respondent, was entitled to dower therein.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions :

The complainant is the widow of Elias C. Duer, and as such files her bill to establish her right as tenant in dower to lands in Trenton. The allegations of the bill are that her husband, Elias C. Duer, purchased these premises and paid for them, but had the permission of Samuel K. Rose to take the title in his name, and did so. In my judgment, the proof establishes this view of the case. The only question that causes the least hesitation is whether or not the payment was so made as to fairly bring this case within those which establish resulting trusts.

I think a recital of the facts as detailed by Mr. Rose will remove every doubt. The purchase was made in December, 1852 ; then Mr. Rose was a man of means, and had plenty of property ; Mr. Duer called upon him and requested him to buy this lot; Mr. Duer took and kept the deed ; $1,000 was paid for it, and was raised for that purpose in a loan association.

"The money was taken out of a loan association to pay for this property ; I got the money from the loan association ; the money was got out of the loan association."

He forgets whether he handled the money or not. He says :

"Mr. Duer was to pay the loan, keep the loan up as rent for the property."

In further explanation he says:

"Mr. Duer.told me the property could be bought cheap, and would require no money to be paid down; the money could be obtained out of the loan association; he would keep it in repair and pay the loan up for the rent of the property."

The consideration-money was all paid through the loan, by Mr. Duer.

There never was any accounting between Rose and Duer, nor any settlements of any kind in reference to this property. I cannot discover that Rose at any time exercised the slightest control or dominion over it, or claimed the right to, except to convey the title, as hereinafter mentioned. Duer paid off the loan, and so paid for the lot, and informed Rose that it was paid. After this, Duer continued to live on the property and to control it as his own, and yet Rose demanded no rent either from Duer or from any of his tenants. These facts seem strongly to repel the suggestion that there was no such thing as a trust contemplated.

Mr. Duer either occupied the entire premises, or part of them, until his death, and when he did not occupy all he had tenants in the portion which he did not occupy himself. Mr. Rose knew this, but he collected no rent and called no one to any account therefor.

On cross-examination by counsel of defendants, Mr. Rose was asked whether he bought that property in trust for Elias C. Duer or for his use, to which he replied:

"I expected him to go there, of course; that is the same thing, isn't it? yes. *Q.* You say you expected him to go there; how was he to go there; was he to pay rent? *A.* Why, certainly; he was to live there and pay rent in the house."

He further says Duer "was to keep up the loans and pay the taxes," and "keep the premises in repair."

Rose conveyed to the defendant Mrs. Caroline D. Mershon, a daughter of Mr. Duer by his first wife. Mrs. Mershon gave no consideration. After she took title she executed a mortgage

upon the land to secure $250. Mr. Duer advised this, and applied to the mortgagee for the money. Mrs. Mershon says she paid this mortgage. She says her father paid no rent, but boarded and clothed her for the rent. There was never any accounting between the father and daughter.

I think we have in these undisputed facts all the elements of a resulting trust. At the same time and in the same transaction it was agreed that Rose should take the title in his name, and should raise the consideration-money by a loan on the property, which Duer was to pay, and which he did pay. He paid for all repairs and for all taxes and for improvements upon the property. · He rented portions of it and collected the rents. He accounted to no one, nor did any one ever call him to an account or claim the right to do so. I have been governed by what I understand to be the reason and spirit of the following cases: *Cutler* v. *Tuttle*, *4 C. E. Gr. 549; Howell* v. *Howell, 2 McCart. 75; Stevens* v. *Wilson, 3 C. E. Gr. 447; Wheeler* v. *Kirtland, 8 C. E. Gr. 13; Havens* v. *Bliss, 11 C. E. Gr. 363.*

I think the complainant is entitled to ·dower in the lands described in the bill, and will so advise. She· is entitled to costs.

*Messrs. Howell & Bro.*, for appellants.

*Mr. C. V. D. Joline*, and *Mr. John Scollay*, for respondent.

Per Curiam.

This decree unanimously affirmed for the reasons given by the vice-chancellor.