This bill is filed to impose a resulting trust on property in the City of Newark the title to which is in the name of James Killeen, a brother-in-law of complainant, Catherine Killeen. The complainant, Catherine Killeen, and her husband, John, are elderly people past sixty years of age.
In the summer of 1943 complainant and her husband set about to buy a piece of property in which to conduct a saloon for which they held a license. Premises 610 South Tenth Street, Newark, was brought to their attention through an advertisement. Harry J. Stevens, a friend of the complainant and her husband for thirty-five years, and a realtor for many years in Newark volunteered to help the couple to achieve their ambition. He knew that John Killeen had a judgment against him and for that reason did not want to take the title in his name. Stevens examined the property and said he would procure a one hundred per cent. mortgage for them *Page 388 
with the proceeds of which they could purchase the property but someone would have to be selected who would take the title for them in his name and execute the mortgage.
The mortgage was obtained from the Central Mutual Savings and Loan Association and the title taken in the name of the defendant. Complainant and her husband took possession of the property, paid the necessary carrying charges such as taxes, insurance, c., and also the installment payments on the mortgage to the Central Mutual Savings and Loan Association.
Initially when the complainant and her husband were negotiating for the purchase of the property one Owen Mullarkey says they borrowed $100 from him in August, 1943, and he knew they wanted the money because they were buying property. John Killeen says he followed the suggestion of Stevens to procure someone to take the title, "So I gave my brother's name, with his consent."
At the closing of the title those present besides John Killeen, were his brother the defendant, and his wife, Walter Breuninger and Judge Quigley, now deceased. When the contract was being prepared Breuninger says he was instructed by Killeen to insert the name of James Killeen, and that they went to Paterson to James Killeen's home and had the contract signed. "Q. Was James agreeable to it? A. He was a little reluctant but he eventually signed it after a few minutes' consideration." Breuninger says all arrangements for the purchase of the property were made with John Killeen.
The defendant admits that when his brother, John, first visited him it was for the purpose of obtaining a loan of $2,000 to buy a saloon property. On a second visit he says John spoke to him about this particular property and that he then went to look at it. He says that he asked his brother why he did not take the property in his name and that John told him "I have judgments against me." And that speaking of complainant, John said, "She has got judgments, too, she is on the papers, she can't take it either." The defendant says he told his brother John "If you take care of all the expense, I said, then I will see — I will sign the contract if you can secure the mortgage from your agent." He added that his *Page 389 
understanding with his brother was "I would buy the property in three years, three years' time. I said I will give you three years and at that time you can go to court and have the judgment straightened up. * * * In three years you will be in position to buy the property back from me if you want it, if the business is fit."
I place no credence in his testimony, for the defendant admits that he never collected rent from the premises, or that he paid any installments to the building and loan association on account of principal or interest on the mortgage or that he exercised any dominion over the property during all of the intervening years. The complainant and her husband rented portions of the premises and collected the rents. They neither accounted to the defendant, nor did he ever call on them for an accounting. Mershon v.Duer, 40 N.J. Eq. 333; 1 Atl. Rep. 23.
There is no doubt in my mind from the testimony that the intent of the parties as inferred from their acts at the time of the transfer of title, and the surrounding circumstances, was that the defendant, James Killeen, was to hold the title in trust for complainant and her husband.
"In all species of resulting trusts, intention is an essential element, although that intention is never expressed by any words of direct creation. There must be a transfer, and equity infers the intention that the transferee was not to receive and hold the legal title as the beneficial owner, but that a trust was to arise in favor of the party whom equity would regard as the beneficial owner under the circumstances. * * * Resulting trusts, therefore, are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. In such case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. This person is the one from whom the consideration actually comes, or who represents or is identified in right with the consideration; the resulting trust follows or goes with the real consideration." 4 Pom. Eq. Jur. 61 § 1031.
Decree will be advised that the defendant holds the property in trust for Catherine Killeen and John Killeen, her husband, the latter having been added as a party complainant during the course of the proceedings. *Page 390